<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

MICHAEL MIRZA,

               Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

               Defendant.

---

Case No.:  2:18-cv-00185 (PAZ)

**OPINION**

**APPEARANCES:**

AGNES S. WLADYKA
AGNES S. WLADYKA, LLC
1122 ROUTE 22 WEST
MOUNTAINSIDE, N.J.  07092
      On behalf of Plaintiff

EVELYN ROSE MARIE PROTANO
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, P.A.  19123
      On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Michael Mirza for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401, et seq.). Plaintiff appeals from the final decision of the Administrative Law Judge ("ALJ") denying the application; Defendant, the Commissioner of Social Security ("the Commissioner"), opposes

Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court affirms the Commissioner's decision that Plaintiff was not disabled during the relevant period.

## I.    PROCEDURAL HISTORY

On August 29, 2014, Plaintiff filed an application for DIB alleging a disability onset date of June 15, 2006.  (R. 148-49.)[2]  On October 9, 2014, the Commissioner determined that Plaintiff was not disabled and denied the application.  (R. 59.)  On January 13, 2015, Plaintiff's application was denied on reconsideration.  (R. 66.)  On May 19, 2016, an Administrative Law Judge held a hearing on Plaintiff's application; Plaintiff was represented by counsel at the hearing.  (R. 31-52.)  On August 11, 2016, the ALJ issued a decision denying Plaintiff's application.  (R. 15-30.)  On November 13, 2017, the Appeals Council denied Plaintiff's request for review, thereby affirming the ALJ's decision as the "final" decision of the Commissioner.  (R. 1-5.)  On January 1, 2018, Plaintiff timely filed this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  ECF No. 1.  On April 30, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  ECF No. 9.[3]  The case was reassigned to the undersigned Magistrate Judge on March 28, 2019.  ECF No. 18.

---

[1]  On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security for a six-year term that expires on January 19, 2025.  Mr. Saul is therefore substituted as Defendant in his official capacity.

[2]  "R." refers to the continuous pagination of the administrative record on appeal.  ECF No. 5.

[3]  Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision.  *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ

may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which

[s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186

F.3d 422, 429 (3d. Cir. 1999)).  "[T]he ALJ is not required to supply a comprehensive explanation

for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice."

*Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative

evidence was not credited or simply ignored."  *Id.* at 705.  As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings.  *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984).  Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).  A decision to "award

benefits should be made only when the administrative record of the case has been fully developed

and when substantial evidence on the record as a whole indicates that the claimant is disabled and

entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*,

166 F. Supp.3d at 518.  In assessing whether the record is fully developed to support an award of

benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.    Standard for Awarding Benefits

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for Social Security disability benefits based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Thus, an impairment can be established by objective medical evidence from an acceptable medical source, but cannot be established by a statement of symptoms, a diagnosis, or a medical opinion. *Id.* §§ 404.1521, 416.921.

---

[4] Disability Insurance Benefits (*see* 42 U.S.C. §§ 401, et seq.) and Supplemental Security Income (*see* 42 U.S.C. §§ 1381, et seq.) are separate programs under Title II and Title XVI, respectively, of the Social Security Act. Although they are subject to different qualification requirements, the standard for determining whether a claimant is disabled is the same for both programs. *See Rutherford v. Barnhart*, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). The Court endeavors to provide citations to the applicable regulations for each program but may provide citations only to the disability insurance benefits regulations. *See Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

The process for determining an adult's claim for Social Security disability benefits involves a five-step sequential inquiry.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[5]  The claimant bears the burden of proof at Steps One through Four.  At Step Five, the burden shifts to the Commissioner.  *Id.* §§ 404.1512, 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014).  At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step.  20 C.F.R. §§ 404.1523(c), 416.923(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit.  *Id.* §§ 404.1572(a) & (b), 416.972(a) & (b).  If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims."  *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).  At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities.  An impairment or combination of impairments is not severe if the claimant has a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional

---

[5] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. §§ 404.1527 and 416.927.

limitations. *Id.* §§ 404.1522, 416.922. If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence. *Id.* §§ 404.1526(b)(2), 416.926(b)(2). If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* §§ 404.1509, 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) either within the last 15 years or within 15 years prior to the disability date. In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *Id.* §§ 404.1560, 404.1565, 416.945, 416.960. If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms result in exertional and/or non-exertional limitations.  The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id.* §§ 404.1569a(a) & (b), 416.969a(b).  Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing postural or manipulative functions such as reaching, stooping, climbing, crawling, crouching, handling, or fingering; difficulty tolerating environmental or physical features of certain work settings such as dust or fumes; or difficulty maintaining concentration or understanding detailed instructions.  *Id.* at §§ 404.1569a(c), 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  The Grid Rules reflect various combinations of RFC, age, education, and work experience, and direct a finding of disabled or not disabled for each combination.  If the claimant also has any non-exertional limitations or cannot perform

substantially all the exertional demands at a given level, then the Grid Rules are used as a framework for decision-making unless there is a rule that directs a conclusion of disabled without considering the additional non-exertional or exertional limitations. *Id*. §§ 404.1569a(d), 416.969a(d). If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making. *Id*. §§ 404.1569a(c), 416.969a(c).

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was forty-seven years old on June 15, 2006 (alleged onset date), and the date last insured was December 31, 2007. (R. 20, 25.) At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between his alleged onset date and date last insured. (R. 20.) At Step Two, the ALJ found that Plaintiff had the following severe impairments: degenerative arthritis of the right hip and Crohn's disease. (R. 20.) The ALJ also found at Step Two that Plaintiff had degenerative changes in the lumbar spine that was not a severe impairment. (R. 20-21.) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing. (R. 21.) At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform medium work subject to various exertional and non-exertional limitations. (R. 22-24.) The ALJ also found at Step Four that Plaintiff was unable to perform his past relevant work as an automobile service station owner. (R. 24-25.) At Step Five, the ALJ found that a finding of not disabled would be directed by Grid Rule 203.29 if Plaintiff had the RFC to perform the full range of medium work. The ALJ also found at Step Five that at least 3 jobs – patient transporter, hand packager/inserter – promotional item, and crater liner – existed in significant numbers in the national economy and could be performed by an individual with Plaintiff's age, education, work experience, and RFC.

(R. 25-26.)   The ALJ concluded that Plaintiff was not disabled between June 15, 2006 and December 31, 2007.  (R. 26.)

Plaintiff contends that the ALJ committed four reversible errors:  (1) at Step Two, the ALJ failed to find that Plaintiff's degenerative changes in the lumbar spine is a severe impairment (*see* ECF No. 14 at 10-12); (2) at Step Four, the ALJ's assessment of Plaintiff's subjective symptoms is not supported by substantial evidence (*see id.* at 12-15); (3) also at Step Four, the "ALJ's RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence" (*id.* at 15-18); and (4) at Step Five, the ALJ failed to include all of Plaintiff's limitations in the hypothetical questions presented to the VE (*see id.* at 19-20).[6]  Plaintiff asks the Court to remand for payment or, alternatively, for a new hearing.  Defendant contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

## IV.   SUMMARY OF RELEVANT EVIDENCE

### A.   Medical Evidence.

The record contains sparse medical evidence, with less than ten pages related to the relevant period between Plaintiff's alleged onset date in June 2006 and Plaintiff's date last insured in December 2007:

- In March 2007, Plaintiff's CT scan revealed:  mild splenomegaly of uncertain etiology; wall thickening of a long segment of the distal but not terminal ileum that may represent a form of ileitis; degenerative lumbar spine changes at the L5-S1 level and to a lesser extent at the L4-L5 level; and degenerative and productive

---

[6] The alleged error about which Plaintiff complaints at Step Five – the failure to include additional limitations in the RFC finding – involve Step Four, where the burden of proof rests with Plaintiff.  *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005).  Accordingly, the Court addresses Plaintiff's self-styled challenge to the ALJ's Step Five finding in Section V.C. below (which addresses Plaintiff's challenge to the ALJ's Step Four RFC finding).

change in the right hip. (R. 243-44.) Also in March 2007, Plaintiff's x-rays revealed findings compatible with the presence of Crohn's disease involving the distal and probable terminal ileum. (R. 242.)

- In April 2007, Plaintiff underwent a colonoscopy procedure by Dr. Vivian K. Bethala (gastroenterology). Dr. Bethala prescribed anti-inflammatory medications after diagnosing multiple diffuse ileo ulcerations suggestive of Crohn's disease. (R. 235-37.) Pathology results revealed colonic mucosa with no significant changes and small bowel mucosa with severe active nonspecific inflammation and ulceration. No enteritis, colitis, dysplasia, or granuloma was identified. The differential diagnosis included Crohn's disease, infections, and the effects of NSAIDs. (R. 247.)

- In October 2007, Dr. Bethala performed another colonoscopy that revealed multiple ulcers in the ileum and congested mucosa in the recto-sigmoid colon. (R. 249-50.) Pathology results revealed colonic mucosa with no significant changes and small bowel mucosa with mild active nonspecific inflammation. No colitis or granuloma was identified. Dr. Bethala prescribed Pentasa. (R. 248-50.)

In August 2008, a comparison of CT scan findings to those from March 2007 revealed no significant change. (R. 241.) In March 2009, a CT scan revealed findings compatible with chronic ileitis with no further progression, and a comparison to prior CT scan findings revealed no significant interval change. (R. 240.) In April 2010, a CT scan revealed findings compatible with chronic ileitis, and a comparison to prior CT scan findings revealed no significant interval change. (R. 239.) In April 2011, Plaintiff's CT scan revealed findings consistent with Crohn's disease. A comparison to prior CT scan findings revealed no significant change as to Plaintiff's gastrointestinal issues and a mild progression since 2007 as to Plaintiff's moderately severe osteoarthritis of the right hip. (R. 238.) In April 2012, Dr. Bethala performed a colonoscopy that revealed ileitis. (R. 251-53.) Pathology results revealed small and colonic mucosa without significant changes and colonic mucosa with a lymphoid aggregate; no enteritis, colitis, dysplasia, or granuloma was identified. Dr. Bethala instructed Plaintiff to continue with his prescribed medication. (R. 246.) In October 2012, Dr. Bethala performed a colonoscopy that revealed ileitis. (R. 254-56.) Pathology results revealed small bowel and colonic mucosa with no significant

changes; no enteritis, colitis, or dysplasia was identified. Dr. Bethala instructed Plaintiff to continue with his prescribed medication. (R. 245.)

In August 2014, Plaintiff saw Dr. Bethala for a follow-up evaluation. Dr. Bethala noted:

[Plaintiff] has been doing fairly well with his Crohn's disease[;] bowel movements are normal. He is currently on Pentasa 500 mg 2 pills 3 times a day. He is off the steroids and has been feeling well[;] no abdominal pain[,] nausea[,] vomiting[;] no diarrhea. He still has significant problems with his arthritis especially when he plays soccer.

Physical examination findings included: normal spine without deformity or tenderness and with normal range of motion; no deformities, clubbing, cyanosis, or edema in the extremities; no muscle tenderness or joint swelling; no neurological deficits; and gait within normal limits. Plaintiff was instructed to continue with his current medication. (R. 262-64.) In September 2014, Dr. Bethala completed a General Medical Report and indicated that he had examined Plaintiff every six months since March 2007. Dr. Bethala described Plaintiff's diagnosis as "Crohn's disease, in control." In response to a question asking whether he could provide, based on his medical findings, a medical opinion regarding Plaintiff's ability to do work related activities, Dr. Bethala checked the "No" box. (R. 257-59.)

In October 2014, State Agency reviewing consultants noted that Plaintiff's application alleged disability as of June 2006 due to Crohn's disease, degenerative hip and back (osteoarthritis), chronic thrombosis, splenomegaly, and heal spurs/flat feet. They further noted that Plaintiff's date last insured was December 2007 and that he had inflammatory bowel disease as a severe medically determinable impairment. However, they did not offer an opinion regarding Plaintiff's RFC because "[t]here is insufficient evidence to evaluate the claim." (R. 53-58.) In January 2015, State Agency reviewing consultants affirmed this decision on reconsideration. (R.

60-65.)  The Court observes that Plaintiff twice advised the reviewing consultants that they had received all relevant medical evidence.  (R. 55, 63.)

In April 2015, x-rays revealed:  tertiary esophageal contractions; terminal ileitis; and degenerative spine and right hip changes.  (R. 280.)  Also in April 2015, a lumbosacral spine MRI revealed:  degenerative disc disease at L4-5 and L5-S1 with straightening of the lumbar curvature; moderate compromise of the sac at L4-5 with a bulging disc, central and bilateral disc herniation larger on the right and productive changes; bulging disc with osteophyte formation at L5-S1; and moderate arthritic changes of the right hip joint with cartilage loss, subchondral cyst and edema of the bone marrow of the femoral head, and degenerative tear of the lateral labrum.  (R. 281.)

In August 2015, Dr. Jack Jallo (neurological surgery) prepared a report regarding his appointment with Plaintiff on May 12, 2015.  Dr. Jallo's report contains no physical examination findings.  Based on a review of Plaintiff's April 2015 MRI, Dr. Jallo opined that Plaintiff had degenerative spondylosis at L4-L5 and L5-S1 with disc-osteophyte complexes at L4-L5 and L5-S1 with associated foraminal stenosis as well as endplate Modic changes.  Dr. Jallo also opined that Plaintiff's severe symptoms correlated with the imaging reports.  Specifically, Plaintiff was unable to stand or sit for more than one or two hours without having to change positions; could not perform any significant strenuous activity given his pain level while at rest; and experienced weakness in his right leg and thigh with associated diminished sensation.   Plaintiff told Dr. Jallo that persistent pain "has limited his ability to work and has resulted in loss of his business and as a result, he has been disabled and unemployed since original injury in the 1980s."  Dr. Jallo further opined that Plaintiff was not a good surgical candidate and concluded:

> Given that he has had these progressive symptoms again since 2002, expectation is that this is a progressive degenerative disorder, which would be expected to worsen over time.  I do not expect these symptoms to improve with surgery or treatment; however, these can be ameliorated to some extent with a combination of physical

therapy and pain management.  At this point, I do believe the patient, given his previous history and treatment, has reached maximal medical improvement. Expectations for future activity are limited given his severe degenerative lumbar spine disease and pain that limits everyday activities.  He is unable to sit or stand for any significant period of time, unable to perform any lifting, bending, or twisting.  The foregoing assessment is based on my greater than 15 years of medical experience.

(R. 283-84.)

## B.    Plaintiff's Function Report And Hearing Testimony.

In December 2014, Plaintiff completed a Function Report and advised that he lived in a house with his mother (who was then 89 years old).  He described his daily activities as doing household chores and taking care of his mother.  He stated that "back and hip pain never sleeps, so [he] feel[s] it all the time" and with "Crohn's disease you can wake up and have to run to the bathroom."  It was difficult for him to put on and lace up his shoes; his back and hip hurt when bending to bathe, when standing to care for his hair and shave, and when siting to feed himself; and he used the toilet six to twenty-six times a day.  He used an alarm clock as a reminder to take his medication.  He cooked for thirty to sixty minutes daily and prepared both sandwiches and hot meals.  He could not do outdoor chores and spent less than hour daily on indoor cleaning, laundry, and small household repairs.  He went outside if he was not in too much back and hip pain when "Crohn's let[] me."  He drove a car and could go out alone.  He shopped for food and household items twice a week for one hour each time.  His hobbies included watching television, using the computer, and going to church.  He engaged in these activities every week.  He spent time with others a few times a week either in person or over the phone.  He experienced difficulties with lifting, walking, stair climbing, squatting, sitting, bending, kneeling, standing, reaching, and completing tasks.  He could walk twenty to fifty yards before needing to stop and rest for one to ten minutes.  He could pay attention for as long as necessary unless he was in pain.  He followed

written instructions well, and his ability to follow spoken instructions "depends on the instructor."

He was prescribed orthotics for flat feet, which he has worn daily since 1990. (R. 182-89.)

In May 2016, Plaintiff testified at the hearing in response to questioning from his counsel

and the ALJ. The ALJ summarized Plaintiff's testimony as follows:

> He has a high school education and his past work is primarily that of a gas station
> owner. He alleged disability because of Crohn's disease and chronic pain in this
> back and hips. The undersigned instructed the claimant to testify only as to the
> period at issue, being from June 15, 2006 through December 31, 2007, so the
> allegations related herein are as to that period only. He lives with his mother, and
> did so during the period at issue. He said he had some difficulty with driving, and
> did pretty much all the household chores and drives his mother to the store. He did
> not have difficulty bathing, but stated he had difficulty putting his shoes and socks
> on. He stated he was mainly getting treatment for Crohn's disease, but not for his
> back. He stated that he went to the bathroom up to seven times per day. He stated
> he had to lie down during flare-ups of his Crohn's. He alleged he experienced
> constant cramps. He was not on a special diet, but stated he had to avoid foods that
> exacerbated his Crohn's symptoms. He alleged he had constant pain in his hip and
> back. He said his leg and hips would lock. He alleged he was advised to lie down
> and stretch for his back and hip pain. He stated he did not sleep well because of his
> Crohn's and because of hip and back pain. He said his energy level was depleted
> because of constant trips to the bathroom. He claimed he had to lie down an hour
> for every hour he was up.

(R. 23.) For context, the Court summarizes below Plaintiff's additional testimony.

Plaintiff's back and hip pain began in 1981 following an accident, and he was afflicted

with Crohn's disease at some point between 1999 and 2005. He attributed the onset of Crohn's

disease to the high dosage of "[n]onsteroidal anti-inflammatories [(NAISDs)] which are aspirins"

that he took over many years for back and hip pain. According to Plaintiff, he could not take any

pain medication without adversely affecting his Crohn's disease. He experienced nausea and dizzy

spells for the first few weeks or months after he was prescribed Pentasa for Crohn's disease, and

he still experienced these side effects "once in a while." The Court is unable to locate a transcript

citation for Plaintiff's testimony that he needed to use the bathroom up to seven times a day during

the relevant period. Plaintiff initially testified, in response to questioning by the ALJ, that in 2005

he needed to use the bathroom twelve to sixteen times per day. He testified in response to subsequent questioning by his counsel:

> Q:    I know we're talking about a long time ago obviously going back this far but do you recall or can you recall during that time period maybe what was the longest time or the longest stretch – I'm going to put it this way. I'm sorry, Your Honor. Was there such a thing as an average day versus a worse day when you take the bowel movements during that time period [June 2006 to December 2007]?
>
> A:    In that time period it went – I could honestly say prior to '05 to '04 there was times where I couldn't –
>
> Q:    Well, we're talking about '06 to '07.
>
> A:    Okay. In that time period '06 to '07, '07 was the worse, horrific time.

(R. 35-48.)

## V.    DISCUSSION

### A.    Step Two.

At Step Two, the ALJ correctly explained:

> An impairment is considered "severe" if it can be expected to result in death or has lasted for at least twelve consecutive months and significantly limits an individual's physical or mental ability to perform basic work activities. (20 C.F.R. § 404.1520(c)[.]) Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling or mental functions such as understanding, remembering, and carrying out instructions, use of judgment, responding to supervision and usual situations, or dealing with changes in a routine work setting.

(R. 20.) The ALJ concluded that Plaintiff's degenerative changes in lumbar spine is not a severe impairment:

> Imaging shows degenerative changes in the claimant's spine. However, the record does not show ongoing treatment for this condition. While the claimant references back pain in his testimony, he did not allege limitations related to his back. Rather, his symptoms related to his Crohn's disease and arthritic hip. As the record does not establish that this impairment significantly limits the claimant's ability to perform basic work activities, it is non-severe.

(R. 21 (record citations omitted).)  Plaintiff contends both that this finding lacks substantial evidence and that substantial evidence supports a finding that his back impairment is severe.  The Court need not decide these arguments because the ALJ ultimately found in Plaintiff's favor at Step Two by finding that his Crohn's disease and degenerative arthritis of the right hip are severe impairments.  *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("even if [the ALJ] had erroneously concluded that some of [claimant's] other impairments were non-severe, any error was harmless"); *see Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 261 n.2 (3d Cir. 2006) (same); *Ross v. Astrue*, No. 08-cv-5282 (SDW), 2010 WL 777398, at *5 (D.N.J. Mar. 8, 2010) (same).  The Court addresses below Plaintiff's arguments regarding the ALJ's consideration of Plaintiff's at Step Four.  ECF No. 16 at 3 (citing Social Security Ruling 96-8p, Titles II & XVI:  *Assessing Residual Functional Capacity In Initial Claims*, 1996 WL 374184 (S.S.A. Jul. 2, 1996); *see* 20 C.F.R. § 404.1523(c) (after finding at least one severe impairment at Step Two, ALJ must consider all impairments – severe and non-severe – in remaining steps of sequential inquiry).

### B.    Step Four:  Subjective Symptoms.

An ALJ is required to assess the claimant's subjective symptoms, including pain, using a two-step process.  *See* 20 C.F.R. § 404.1529; Social Security Ruling 16-3p, *Titles II & VI: Evaluation Of Symptoms In Disability Claims*, 2016 WL 1237954 (S.S.A. Mar. 24, 2016).[7]  First, the ALJ must determine whether the record demonstrates that the claimant possesses a medically

---

[7] Social Security Ruling 16-3p applies to ALJ decisions issued after March 16, 2016 and superseded Social Security Ruling 96-7p, *Titles II & XVI:  Evaluation of Symptoms In Disability Claims: Assessing The Credibility Of An Individual's Statements*, 1996 WL 374186 (S.S.A. Jul. 2, 1996).  Social Security Ruling 16-3p "remove[d] the word 'credibility' from the analysis to make clear that there is no examination of a witness's character, and to hew closer to the regulatory language contained within the relevant C.F.R. provisions."  *Pidgeon v. Colvin*, No. 15-cv-2897 (JBS), 2016 WL 2647666, at n.7 (D.N.J. May 9, 2016) (finding that "analysis is the same under either ruling").

determinable impairment that could reasonably produce the alleged symptoms.  Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations.  To do this, the ALJ must consider both objective medical evidence and other factors, including:  (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the symptoms; (5) treatment, other than medication, the claimant receives or has received to relieve the symptoms, (6) any measures, other than treatment, the claimant uses or has used to relieve the symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to the symptoms.  The ALJ's determination must contain specific reasons for weight given to the claimant's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the claimant and any subsequent reviewer can assess how the adjudicator evaluated the claimant's symptoms.

After explaining this two-step process, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. 23.)  Plaintiff argues that ALJ erroneously discounted the pain and other symptoms he suffered during the relevant period from his orthopedic and gastrointestinal impairments.  The Court disagrees.

### 1.     Orthopedic Impairments.

As to his orthopedic impairments (i.e., degenerative arthritis of the right hip and degenerative changes in the lumbar spine), Plaintiff argues that the intensity, persistence, and

limiting effects of the related symptoms is supported by his CT scans from 2007 through 2011, his MRI from April 2014, and Dr. Jallo's report from August 2014. *See* ECF No. 14 at 12-13. Plaintiff's reliance on this evidence is misplaced.

First, the earliest CT scan results from 2007 revealed unspecified "degenerative lumbar spine changes at the L5-S1 level and to a lesser extent at the L4-L5 level" and unspecified "degenerative and productive change in the right hip." (R. 243.) As the ALJ observed, comparison of subsequent CT scans in 2008, 2009, 2010 and 2011 revealed no significant changes involving his lumbar spine and only mild progression in osteoarthritis of his right hip. These imaging findings are not, by themselves, substantial evidence that Plaintiff's symptoms from his orthopedic impairments limited his functional abilities in 2006 and 2007 to less than sedentary work.

Second, Dr. Jallo opined as to Plaintiff's functional abilities *as of 2014*. As the ALJ observed, "did not provide an opinion as to his level of functioning during the period at issue, which ended nearly eight years prior." (R. 24.) Although Dr. Jallo repeated Plaintiff's assertion that his symptoms had been consistent since 2002, Dr. Jallo was careful to restrict his opinion to the limiting effects of Plaintiff's symptoms on imaging findings *from 2014*. Dr. Jallo's opinion that Plaintiff's orthopedic impairments were progressive degenerative disorders expected to worsen over time undercuts Plaintiff's position, in that Plaintiff's symptoms – and thus his resulting limitations – were presumably less severe in 2006.

Moreover, as the ALJ further observed, Plaintiff sought no treatment during or after the relevant period for his orthopedic impairments. Plaintiff argues that the ALJ erroneously ignored the side effects of medication as "reported by [P]laintiff and found in the medical evidence" – namely, "how the pain medication he had to take for the pain caused by his osteoarthritis made the symptoms of his Crohn's disease much worse." ECF No. 14 at 13 (citing R. 35-36, 44-45); *see*

20

ECF No. 16 at 4.  Contrary to Plaintiff's assertion, the record is devoid of any such medical evidence.  Nor is there any evidence, medical or otherwise, that Plaintiff sought other forms of treatment like physical or chiropractic therapy during or after the relevant period.  Plaintiff "testified that he had been able to manage his symptoms with stretching and rest." (R. 24.)  This is consistent with Plaintiff's Function Report and hearing testimony, in which he confirmed that he cared for his mother daily (and did their household cooking, cleaning, and shopping) prior to, during, and after the relevant period.  (R. 24.)  *See Fusco v. Colvin*, No. 14-cv-2116 (SDW), 2014 WL 6908919, at *4 (D.N.J. Dec. 9, 2014) (explaining that "[s]uch activities call into question the extent to which [claimant] was actually hindered" by his impairments).  It is also consistent with Plaintiff having played soccer at least until 2014 when he complained to Dr. Bethala that his arthritis was interfering with his game.  Nevertheless, Dr. Bethala's physical examination at that time revealed normal orthopedic, musculoskeletal, and neurological findings.  (R. 262-64.)

### 2.      Gastrointestinal Impairment.

As to his gastrointestinal impairment (i.e., Crohn's disease), Plaintiff argues that the intensity, persistence, and limiting effects of the related symptoms is supported by his hearing testimony.  Plaintiff specifically directs the Court to the testimony that during the relevant period, he needed to use the bathroom at least twelve to sixteen times each day; he had accidents when he did not make it to the bathroom; and he experienced constant cramping.  *See* ECF No. 16 at 4. Plaintiff's reliance on this evidence is also misplaced.

As the ALJ observed, Plaintiff's March 2007 CT scan, x-rays, and colonoscopy results support that Plaintiff's suffers from Crohn's disease.  As the ALJ also observed, comparison of CT scan results from 2008-2011 and colonoscopy results from October 2007, April 2012, and October 2012 revealed no significant changes.  (R. 23.)  There are no treatment notes in the record

detailing Plaintiff's reported symptoms or physical condition until August 2014, when Dr. Bethala reported that Plaintiff "has been doing fairly well with his Crohn's disease." Dr. Bethala specifically noted that Plaintiff had normal bowel movements and reported no abdominal pain, nausea, vomiting, or diarrhea. (R. 262-64.) Dr. Bethala's September 2014 General Medical Report indicated that Plaintiff's Crohn's disease was "in control" without reference to any adverse symptoms. In fact, Dr. Bethala represented that he could not provide, based on his medical findings, a medical opinion regarding Plaintiff's ability to do work related activities. (R. 257-59.) There are no subsequent treatment notes in the record.

In sum, the ALJ's assessment of Plaintiff's subjective symptoms during the relevant period is not "inherently incredible or patently unreasonable." *Stockett v. Comm'r of Soc. Sec.*, 216 F. Supp.3d 440, 463 (D.N.J. 2016) (quotation omitted); *see Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal.") (quotation omitted). The Court therefore finds that substantial evidence supports the ALJ's assessment of Plaintiff's subjective symptoms between June 2006 and December 2007.

### C.    Step Four:  RFC Finding.

The State Agency reviewing consultants did not conduct an RFC analysis because of the dearth of record evidence. However, the ALJ found that during the relevant period:

> [T]he claimant had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), more particularly as follows:  The claimant can lift and carry 50 pounds occasionally and 25 pounds frequently.  He can stand, walk, and sit for six hours out of an eight-hour workday.  He can occasionally kneel and crawl, but can never climb ladders, ropes, or scaffolds.  He cannot work at unprotected heights or around dangerous machinery.  He can perform simple routine tasks because of physical symptoms.

(R. 22.)[8]  Plaintiff's contention that the RFC finding did not include all credibly established limitations recycles his contention that the ALJ erroneously discounted his subjective symptoms. Having found no error in the ALJ's assessment of Plaintiff's subjective symptoms, the Court finds no error in the ALJ's RFC finding.

## V.    CONCLUSION

For these reasons, the Court affirms the Commissioner's decision that Plaintiff was not disabled during the relevant period as set forth in the accompanying Order.

Dated:   June 28, 2019                                          s/ Paul A. Zoss
At Newark, New Jersey                                 PAUL A. ZOSS, U.S.M.J.

---

[8] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If a claimant can do medium work, then he or she also can do sedentary and light work.  *See* 20 C.F.R. § 404.1567(c).  "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.  As in light work, sitting may occur intermittently during the remaining time."  Social Security Ruling 83-10, *Titles II & XVI:  Determining Capability To Do Other Work – The Medical-Vocational Rules Of Appendix 2*, 1983 WL 31251, at *6 (S.S.A. 1983).